## National Grocery Co. v. Johnston Bros. Co.

(Decided Feb. 11, 1936.)

WOODWARD, DAWSON & HOBSON for appellant.

DODD and DODD for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The National Grocery Company and Johnston Brothers Company, corporations, occupied adjoining

buildings in the city of Louisville, Ky., and engaged in selling groceries by wholesale.

A contract was entered into between them whereby Johnston Brothers Company agreed to sell, and the National Grocery Company agreed to buy, the stock of groceries of Johnston Brothers Company. The contract was reduced to writing, signed, delivered, and accepted. The National Grocery Company agreed to accept all merchantable goods at market price less customary discounts. Those which were not merchantable it agreed to accept at a price to be agreed on by the parties, with the right of Johnston Brothers Company to dispose of the unmerchantable goods, on the price of which they were unable to agree. The contract provided that "an accurate and recorded inventory" should be taken in duplicate by two representatives of the buyer and two of the seller, and in case they were unable to agree on any price or item, these representatives were privileged to call in a third party, and his decision should be final. It was stipulated that the taking of the inventory should be commenced December 1, 1932, and during the taking of which Johnston Brothers Company should close its place of business, and when the inventory was completed the merchandise was to be considered as sold to the National Grocery Company. The contract provided that as the inventory was being made the National Grocery Company should commence to remove such items as it desired, paying in cash at the close of each day's business for the total amount of goods removed during the day, and this procedure was to be followed daily until all had been removed: Twenty-five per cent. of the total value of the inventory was to be paid by the National Grocery Company January 1, 1933; 25 per cent. more, prior to February 1, 1933; 20 per cent. more, prior to March 1, 1933; 20 per cent. more, prior to April 1, 1933; and the remaining 10 per cent. prior to May 1, 1933. Johnston Brothers Company, as a part of the consideration, agreed to use its influence in such ways as would seem fitting and proper, to have its customers transfer their patronage to the National Grocery Company, with the privilege to it to use certain of Johnston Brothers Company's brands over its name.

J. B. Brown and Clem D. Johnston, on the 30th day of November, 1932, in the absence of representatives of

the National Grocery Company, began to make the inventory. As it was being made and until it was completed by them, the National Grocery Company daily sent orders to Johnston Brothers Company for a list of merchandise it desired to be delivered as per the terms of the contract. In this manner it accepted of the merchandise over $13,000 worth at the inventory prices and paid therefor between the beginning of the making of the inventory and the 12th day of December, the date of the delivery of the completed inventory to the National Grocery Company. Brown had been in the employment of Johnston Brothers Company for nine years and Clem D. Johnston was one of its stockholders. They were perfectly familiar with the merchandise and the cost price of every article on hand. When the inventory was completed, Brown carried it to Henninger, the manager in charge of the National Grocery Company; Clem D. Johnston was present at the time of its delivery. Henninger, after looking over it, agreed it was fair. And whether Henninger stated the inventory was fair, it is admitted that it was completed and delivered to him December 12th. While the contract of sale provided that it was to be made by two representatives of each party and it was made by two representatives of the Johnston Brothers Company not in the presence of and without the aid of two representatives of the National Grocery Company, no objection then or now was lodged to it for this reason. Nor was it contended then by Henninger that the merchandise as inventoried was not merchantable, nor did he for the National Grocery Company demand of the Johnston Brothers Company to exercise its right to dispose of the unmerchantable goods, if any had been inventoried. The National Grocery Company admittedly, after the completion of the inventory and its delivery to Henninger, failed to pay the per cent. of the purchase price of the merchandise as it agreed to do by a provision in the contract of the parties. Not until several months after the inventory was delivered, and not until the National Grocery Company endeavored to borrow the money with which to pay the balance of the purchase price of the merchandise, did Henninger complain of the inventory containing unmerchantable goods. After the inventory was delivered to Henninger for the National Grocery Company, few adjustments were made by Henninger and Clem D. Johnston. There-

after, Henninger began to make efforts to obtain for the National Grocery Company cash with which to pay for the balance of the merchandise as per the inventory, amounting to $12,487.52. Clem D. Johnston rendered him friendly assistance in his efforts to borrow money for that purpose. Henninger failed to raise the cash necessary to pay the balance of the inventory price of the merchandise. On the 27th day of May, 1933, Johnston approached Henninger with the view of collecting of the National Grocery Company the balance due for the merchandise. Then Henninger began to raise objections, claiming the merchandise was not merchantable. Clem D. Johnston offered to permit Henninger to pick out what he thought was unmerchantable and then refer all questions about the same for adjustment as provided in their written contract. They agreed to select each a representative to make the adjustment; the National Grocery Company selected Iler, and Johnston Brothers Company, Wahking. Without reading the contract between the parties or obtaining any information of their duties under their selection, Iler and Wahking went to Johnston Brothers Company's place of business, made a general survey of the merchandise on hand; then one of them suggested that the inventory cost price should be reduced 25 per cent.; the other insisted it should be 35 per cent.; then they agreed on 30 per cent. deduction. They separated and later orally reported their action. Johnston Brothers Company declined to accept their action as a compliance with the provisions of the contract. The National Grocery Company still refusing to accept the balance of the merchandise on hand, as per the terms of their contract, Johnston Brothers Company to protect itself, proceeded to sell the merchandise. The same was sold for the sum of $9,118.40, or $3,369.04 less the cost thereof as per the inventory. It incurred costs and expenses incident to the sale of the merchandise in the sum of $2,734.62, which when taken from the amount realized therefor left $6,103.66, the amount claimed by Johnston Brothers Company to be due it.

This action was brought by Johnston Brothers Company to recover the difference realized from the sale of the merchandise and the inventory prices. The court entered a judgment in its favor. Of this, the National Grocery Company is here complaining. The Na-

tional Grocery Company's defense was a denial with an affirmative allegation that a dispute arose between it and Johnston Brothers Company, and that after much controversy between them about the amount thereof, it was finally agreed by them each to appoint an appraiser with authority in them to appraise the balance of the merchandise then on hand, and that the National Grocery Company would then pay for such inventory the amount fixed by the appraisers. It further averred that they selected the appraisers who had made the appraisement and certified the same to the National Grocery Company and to Johnston Brothers Company, and that the National Grocery Company promptly accepted the appraisement and so notified Johnston Brothers Company, when it refused to deliver the merchandise and to carry out its agreement. This agreement to arbitrate and the action of the arbitrators thereunder are pleaded as a bar to a recovery. An item of rent is presented in the pleadings but not treated in the briefs. Therefore, we will not consider it.

Without detailing the evidence and without giving weight to the judgment of the chancellor, we are prepared to say that it satisfactorily establishes that the inventory by Brown and Johnston was accepted by Henninger for the National Grocery Company as complying with the contract of the parties, and that on the date the inventory was completed and delivered, an infinitesimal portion of the stock was not merchantable.

That portion of the stock which thereafter, and before Iler and Wahking were selected by the parties, became unmerchantable, such condition necessarily resulting from the National Grocery Company's permitting the same to remain in a closed building. Common knowledge convinces us that some of the merchandise on hand in the closed building became unmerchantable because it was so left by the National Grocery Company after the completion and delivery of the inventory and before the selection of Iler and Wahking, some time in May or June following the date of the inventory. We are convinced that as to this issue the evidence sustains the judgment of the chancellor.

A scrutiny and examination of the evidence convinces us that the primary reason of the National Grocery Company not accepting and paying for the bal-

ance of the merchandise as per the inventory was, it was financially embarrassed, and after a reasonable effort to do so, it was unable to acquire the cash with which to pay for same. There is a total absence of evidence tending to establish a good-faith or other dispute between the parties to be submitted to arbitration. The written contract of the parties provided how and by whom a dispute as to the items and value of the unmerchantable merchandise should be determined. That which the National Grocery Company attempted to prove to establish an agreement for arbitration and the selection of the arbitrators is entirely insufficient to show that Iler and Wahking ever endeavored to determine any of the articles were not merchantable. The allegations of the pleading relative to the claimed arbitration, and the evidence tending to support the same, show that the claimed arbitration was not in accordance with the original contract of the parties. After Iler and Wahking were selected they did not separately or together ascertain from the parties what question or questions they were to arbitrate or determine. Without such information they merely made a casual, general observation of the goods on hand, and agreed on 30 per cent. deduction of the inventory price of the merchandise without any regard to the merchantability of any portion thereof. It is not proven that Johnston Brothers Company and the National Grocery Company authorized Iler and Wahking to fix a discount at which the National Grocery Company was to accept and pay for the merchandise on hand.

The agreement of Iler and Wahking on the 30 per cent. discount did not constitute an arbitration within the contemplation and requirement of either the common law or the statute (Whitehead v. Darling, 5 S. W. 356, 9 Ky. Law Rep. 340; sections 69, 71, 72, Ky. St.) governing arbitrations. The evidence plainly authorized and sustained the judgment of the chancellor.

The judgment is affirmed.